First case today, number 2-1-1-9-0-3 and 2-2-1-1-4-9, United States v. Jorge Mercado-Canizares. Will counsel for the appellant please come up and introduce yourself on the record? Good morning. I appeal to the court, Assistant Federal Public Defender, Jessica Earle, on behalf of Mr. Mercado. May I please have two minutes? You may have two minutes. In Mr. Mercado's revocation hearing, the District Court imposed a sentence nearly double that of the guideline range he was facing for the actual underlying criminal case, possession of an automatic weapon. The District Court imposed a statutory maximum revocation sentence of 60 months in prison without any sound sentencing rationale. It merely repeated garden variety 3553A language before slamming Mr. Mercado with the stat max in his first ever revocation. This was error and this court should reverse and remand for a new sentencing. Today I'll be focusing on the revocation sentencing as it was the most colossal upward variance that this court will have to grapple with. With time permitting, I will briefly address the Kimbrough issues in the new criminal case that arose during the District Court's pronouncement of sentence. Your Honors, Mr. Mercado was stopped on a routine traffic violation, compliant with officers, and at the scene of the traffic violation had two regulation sized magazines with 24 bullets. Then in another show of compliant behavior, Mr. Mercado told agents that they could search his home and took them there to where he was living, where he had two additional magazines and 50 bullets. The government below agreed and recommended a guideline sentence, the higher end, 33 months. Because it could not identify any specific aggravating factors to take it out of the guideline range. So it strikes me the aggravating factor would be that he had been on SR for a gun – a crime in which he used a gun to rob a gas station, and now he's being sentenced for another gun crime. And the judge certainly says those facts, and then he says the various deterrents, public protection. And so I guess if I'm rationalizing all of that, the judge is saying, well, this guy did something like this before. He has another dangerous gun again, and he clearly hasn't learned, and he is a public danger, and we need deterrence. That seems to be – if I'm trying to rationalize what the judge said, that's what I think it was. So why is that not a sufficient explanation? Yes, Judge Ephraim. While he does mention the underlying crime as the only other factor besides the traditional 3553A, I'd like to mention a few points regarding that. First, we're trying to justify a statutory maximum revocation sentence on a decade-old crime committed when he was 22 years old. This is a man now in his 30s at the second time. And even the facts of the case demonstrate a change in behavior. The original case is pointing a gun at a Puma station, as the judge mentioned, whereas now we have a person compliant with officers, so compliant that he even took them to his home voluntarily. So the answer would be threefold. First of all, the guidelines for a Class A felony and a Grade A violation already take into consideration a violent – But see, I think that's where I lose you slightly. So that could be any crime. That could be I committed a fraud that was a white-collar serious crime or some other crime. But this is a violent prior crime, is a violent gun crime, and now he has the same kind of dangerous gun again. So I think that's where I don't follow exactly that it's just, well, it's all accounted for. That part doesn't seem accounted for. Well, respectfully, the guideline doesn't differentiate between the different type of Class A felonies, and there could be something on the other end of Your Honor's argument, which would be that guideline also and sexual exploitation of children. So we're certainly not that far on a Class A. But even taking into consideration that maybe you could differentiate and justify that as a reason to go higher, listing a fact already in the record without explaining why that factor is entitled to more weight, this is a fact in the PSR, just repeating the crime he committed before, would not be enough, as this court held in Munoz. Fontanez, not on plain air, which we aren't here, that would just be recommending, excuse me, repeating a fact that's already taken into consideration without explaining or giving more information. And finally, Your Honor, the additional point would be even if mentioning the prior- Suppose the court had been more explicit. Suppose the court had been as explicit as Judge Aframe and said, you know, this is too similar to what happened before, even if it's more remote, and it's apparent that you haven't learned to stay away from guns. I mean, so if the court had been that explicit, would your argument change? Your Honor, that would be a closer call, but respectfully, that's not the record before the court. But even if that could justify somehow of a higher variance what Judge Aframe mentioned, the court still would have to justify why that extent of the variance is warranted under Serrano-Barrios. And it would have to explain why it would go 27 months higher, and in fact double over what the parties were recommending in the actual underlying criminal case. And the extent of the variance was not justified, even when we would respectfully submit more explanation. Should the amount of ammunition here concern us and the fact that it was at two separate places? I don't think the judge mentioned that second part, but he does mention the ammunition. As far as the revocation proceeding, Your Honor? Yes. So our position there would be I think the judge is just repeating the facts for which he was indicted, because if you notice the transcript at appendix page 35, he actually lists the things that were seized before going into to impose sentence the court has considered. So my reading of the transcript is that wasn't the factor that was coupled or umbrellaed under 3553A. That was mentioned just as the reason for revocation. I read that too, but then on a later page he speaks about the guidelines not taking into account the amount of ammunition. In the new criminal case. Oh, I'm sorry. I think I ignored that. Yes, and that's an important point. Unlike many of the cases that this court reviews where we have sort of a conglomerate new criminal case and revocation at the same hearing, this is an odd factual scenario in that we have the revocation hearing occurring five months before the new criminal case. So we cannot infer all of the arguments the judge then made in the new criminal case back in time to this revocation. The only facts that justify the only pronouncement of sentence is the prior underlying violent crime, which our position would be did not justify the colossal of the variance. Your Honors, briefly, as to the Kimbrough argument, though, in the new criminal case, if Your Honors have no further questions about the revocation, we would just like to mention that what the judge did with Kimbrough in the new criminal case is not what the Supreme Court would sanction as a proper Kimbrough analysis. The district court is, in our opinion, weaponizing Kimbrough without taking the proper- Can I cut to what, on that point, what concerned me? So in the PSR, the last paragraph describes this, I don't know a lot about machine guns, but this supposedly unique aspect of sort of make your own machine gun and that it recoils and that it may spray bullets and that that's more dangerous than a machine gun that you would get from a manufacturer and so that he had that kind of machine gun is more dangerous than the norm. And so that's why he says the guideline doesn't account for that and that's what I'm adding in. Why is that improper for him to do? At first, as to the homemade nature, I would note that that guideline also contemplates other homemade firearms, such as a sawed-off shotgun and other things that aren't regulatory. So to say that I disagree with the guideline just because of the machine gun is him not taking- But he's saying this kind of machine gun made in this way causes a more significant community danger than another kind of machine gun. And the guideline doesn't separate machine guns. And so he's saying that one's more dangerous, I'm going to punish it more harshly because I think that's public safety required. Right. I think the judge- if I may answer the question- the judge coupled the recoil and the features of a homemade guideline under his Kimbrough statement and that is masking- we can't have a system masked under Kimbrough where an individual judge decides, well, I don't like this guideline so I'm just going to say the word Kimbrough as a disagreement for why I don't think the guideline, the homemade nature- So what's your limitation on Kimbrough then? Your Honor, Kimbrough's decided after 20 years of empirical data collected, a nationwide disagreement by various district court judges. And while we're not saying that has to be the standard in every case, Kimbrough certainly doesn't permit a system where a district court judge just says, well, I disagree because of this without taking into account the sort of decades-long disagreement with the guidelines that was a categorical disagreement as in Kimbrough. And what he's doing here, the judge is combining 3553A factors under Kimbrough and it's making a review impossible for this court because we aren't sure how much of the percentage of his sentence was based on a disagreement with the guideline categorically, such as the Eagle Scout versus Street Thug, categorical disagreement with all machine guns, and how much is related to just Mr. Mercado. And that's the problem with the Kimbrough analysis that the court is attempting to take in the new criminal case. Do you think that if there is going to be a Kimbrough disagreement, that it's going to be imperative that the district court at least provide data that supports the court's position, empirical data? In other words, the court said what it said, and it has said the same thing in many cases that have come before us. But, I mean, to date I don't remember seeing any challenges to the empirical data that have resulted in some definitive fact-finding by the district court as to what supports those underlying assumptions. I think that the Kimbrough case is different in that, first of all, that case they're going down, and here you have a judge utilizing Kimbrough to go up. I think empirical data, and also important in Kimbrough, that guideline change was supported by the Sentencing Commission itself. Here there's no such submission by the Sentencing Commission that the machine gun guideline is inappropriate. But in addition to the empirical data, what we would be looking for is the district court to categorically at least apply some sort of benchmark as to how he would recalculate all machine gun cases, and then base that on some sort of empirical data. For example, henceforth I am going to apply plus two points in the guidelines to all machine gun cases because of my categorical disagreement with the guidelines. And that would be the first step in Kimbrough that's not undertaken in this sort of hodgepodge Kimbrough analysis that we have on this record. Before you sit down, do you think it's going to be incumbent upon defense counsel if the judge just utters the word Kimbrough to say what you just said, to challenge the court in that way? Yes, Your Honor, I do think it is incumbent upon defense to challenge, and in this case I do think the objection lodged is towards the Kimbrough analysis, though defense counsel doesn't say the word Kimbrough. I think he says something like, I heard the court and I understand the court's disagreement with the machine gun guidelines, et cetera, et cetera, and goes into the argument. But yes, it would be in the Kimbrough case at the district level up in the Fourth Circuit, it was defense counsel that brought the additional information to the court's attention about how the crack cocaine guidelines were disproportionately affecting black and brown people, et cetera, and it was defense counsel that brought that to the district court's attention. It did have a friendly audience in that that particular district court was already concerned about the guidelines, as were many nationwide. Nothing further, Your Honor. Thank you, counsel. Will attorney for Apley please introduce yourself on the record to begin? Good morning, Your Honors. May it please the court. Assistant United States Attorney Julian Radzinski for the United States. I'd like to first address a couple of points regarding the revocation and the arguments made by sister counsel. With respect to the – as noted by Judge Aframe, this is a case in which the prior conviction was from armed robbery and the judge is dealing now with a defendant who won a revocation. One of the violations among three was the possession of a machine gun. So the idea that this is a changed individual is incorrect. Let's say we agree with you. We've also said the greater the variance, the greater the explanation. And so let's assume that he does say he has a prior gun offense and now this is a gun offense and he's doing the same things, et cetera. What else do you have in terms of what the judge said to explain this type of variance? Well, there's the fact that this is a defendant that was on a five-year supervised release. He's arrested within two years. But he went to the very, very top. So this means there's nobody worse out there. So, I mean, I did all the work when I was talking to the counsel. I kind of amplified what the judge did. But to echo Judge Montecalvo, this judge did very little to get to the absolute top. Isn't that a problem as far as the procedural requirement to explain why you got to the very, very top? It's undoubtedly the case that, you know, the range here is 27 to 33, and the judge went to 60 months of statutory max that he could impose in this case. But he was justified in doing this. The court even said that Mr. Mercado has shown that he is unable to comply with the law or his condition of supervision. And every person who is revoked meets that. So that tells me very little about why this is the worst person, you know, why this is the top of the chart. But, again, you're dealing with someone that has a prior armed robbery, now is escalating with a machine gun. It's not good, but, you know, your opponent counsel talked about, well, there are murders and there are other things, and he doesn't distinguish or do anything but just sort of say the fact, say the 3553 Act, say I'm giving you the highest sentence I probably can. That's about as thin as it can be, isn't it? Well, but there are certainly other violations also. There's no objection from defense counsel during the revocation regarding the violations in the motion. He failed to notify probation regarding his change of address. And, you know, sister counsel makes the argument that the defendant allowed his house to be searched. But, again, this is an address that probation wasn't even aware of. In that house there was extended magazines, two extended magazines. I think I'm confused. Those are the facts. But what did the judge say at the revocation sentencing? Well, the judge said that Mr. Mercado was shown that he's unable to comply, as Mr. A. French says. All revocations are of that sort. Well, why is he as culpable as a murderer? As culpable as a murderer? Yeah, I mean, murder is class A. Sexual abuse of a child would be class A. I mean, so he possessed a gun, which is – and he was given the top of the sentencing. Well, one, it's a machine gun. Second, the judge has discretion in deciding how much to weigh certain things. Perhaps this judge from – But he doesn't tell us that. That's the problem. We don't know why he chose this particular sentence other than he had a prior. Well, the argument from the judge, the implication, is that this is an escalation of crime. I mean, you can say that a prior automatically means that everybody in this judge's opinion gets the max. I mean, is that your position? The judge has the discretion to impose the sentence as long as he provides a proper rationale, in which case he did in this case. So do you agree the proper rationale that was applied here and the only factor that really explains the variance is the fact that this defendant committed a new crime that involved a gun and was on probation for an old crime that involved a gun? And the fact that it's a machine gun as opposed to the prior, which is an escalation. This is now a more dangerous weapon. And that's it. That's the sole explanation for the variance the judge gave here in the revocation sentence. And the judge indicated that this is a defendant that's incapable of complying. There are other violations in that motion too that provide the judge with – that he – there's no objection to those violations, and there are serious violations. Incapable of complying, again, literally applies to every single person who comes before a judge for a revocation. That's true. That's the definition of a revocation. That is true, Judge, but not every defendant that comes before a judge for a revocation is – has a prior armed robbery, a serious armed robbery with a 924C, and then is now escalating that conduct with an even more dangerous weapon, in this case a machine gun. So would you be making the same argument if it was a sawed-off shotgun? Well, I think the argument can be made that a sawed-off shotgun is more dangerous than a regular shotgun. So any kind of altered gun? I don't know if I would say any kind of altered gun because I certainly don't have the knowledge about all dangerousness. But the judge certainly has some discretion to make a decision regarding how much to weigh the dangerousness of a weapon. A machine gun – I think it's pretty obvious that a semi-automatic versus an automatic firearm, there is an escalation there. When you refer to any type of modified gun there, I think it might perhaps get a little trickier. And the judge made a connection here between the prior case and the current case. This was a sentence that was also recommended by the probation officer. I'm the person that knows the defendant best in this case. And again, the guidelines don't necessarily take into account the specifics of this case. Again, it's a machine gun. There were other offenses in this case. With respect to the new criminal conduct, the 922-0, again, there the judge did impose a procedurally and substantively reasonable sentence. I will note that the defense only objected to the amount of ammunition and the type of gun it was here, a machine gun. This court has in its case law has noted that the amount of ammunition can be a factor, especially if it's substantially more than – significantly more ammunition or magazines than a typical case. In this case, there were 74 rounds of ammunition. There were extended magazines that the judge made reference to. I'm interested in your thoughts on what the defense counsel said, which is basically you can't just say Kimbrough, throw a fact out, and say I'm raising the sentence. You need some systematic way to categorically disagree with the guidelines, make an announcement that the guidelines don't account for factor X. I'm going to do something from this day forward in all my cases that have factor X by adding, let's say, two levels, and that that's what a Kimbrough analysis requires, not just this guy, this fact. I don't like the guidelines. Kimbrough, I'm raising the sentence. What is your position about that? The judge went into Kimbrough in this case. He noted his disagreement with the guidelines regarding machine guns. He noted specifically that there was significant ammunition here, that there was the magazines. Certainly, the judge- But that doesn't seem like Kimbrough. That just seems like here are case-specific facts. I'm going to use my 3553A powers to raise the sentence, which seems at least I think the argument I heard was that's something different than Kimbrough. Is that right? It certainly is. It is different than Kimbrough. Under Kimbrough, the judge is allowed to disagree with the guidelines. What does that mean to you? Under Kimbrough? Yeah, I mean, how does that procedurally work out? Because you haven't answered Judge Aframe's question about how you implement a Kimbrough disagreement. Well, the court has to explain specifically what the disagreement is with the guidelines, explain in detail why it's disagreeing with the guidelines, what is not accounted for in the guidelines. Does the court have to say, henceforth, I'm always going to add two points? To answer that question truthfully, I'm not sure of the answer to that at this moment. Except it seems like it should be, right? Because the idea is I've looked at this guideline, which supposedly had all of this thought that went into it, but it missed something. Not in this case, but in the cases about this problem. And so it doesn't seem like it lends itself to this defendant-by-defendant analysis if we take Kimbrough for what I think it means. That's Kimbrough being a more systematic challenge to the guidelines. Right. A broader policy challenge to the guidelines itself. Yeah. I mean, the judge certainly doesn't do that in this case. But the sentence on the new criminal conduct here is still justified because he provided individualized factors regarding this defendant as to why he was justifying an upward variance to 48 months from the high end of the guidelines of 37. Thank you. I think your time is up. Thank you. Thank you, counsel. Attorney for Appellant, you have a two-minute rebuttal. Your Honors, first, as to the probation officer's recommendation for the statutory maximum, absent information from probation as to the basis for that statutory maximum, it's entitled to no weight. It's a hollow recommendation. And it suffers from the same problem that the district court's variance does. There's lack of information. And, in fact, it's even worse because the probation officer's supposed recommendation doesn't correspond with the docket about Mr. Mercado's behavior on supervised release. And that would bring me to the next point. The government says, well, he's not a changed individual. Actually, his record on supervised release is they're calling it an escalation. But what we have because of the difference in the gun. But the prior case is a 22-year-old drug addict who's committing armed robbery. And the new case, while granted as a machine gun, is a 30-year-old who's compliant and drug-free. So there's no recommendation by probation ever about any drug, excuse me, motions filed about any drug positives. In fact, there's a motion filed to remove his electronic monitoring because of compliance and because he has a job. So to have probation give the statutory maximum recommendation, in our opinion, would be a hollow recommendation because there's nothing on the record to justify that recommendation. Finally, Your Honors, as to the Kimbrough point that was, questions were asked again. Our main concern, and I think the court understands, is what the Flores-Gonzalez panel decision explained as the blending problem that we're having here. And while this district court judge provided many more reasons for the variance in the new criminal case than he did in the revocation, the decision still suffers because it's unable to have appellate review because of that blending decision. So the blending there is what causes the sentencing rationale to be infirm because we are unable to determine, well, was Kimbrough 90% and the bullets were 10% or is the recoil the Kimbrough argument or is it the locality argument? Because Kimbrough is blended with all these other 3553A factors, the district court's rationale can't stand appellate review and we would respectfully ask that both cases be reversed and remanded. Thank you. Thank you, Counsel. That concludes arguments in this case.